STATE of Missouri, Respondent,

v.

Joshua Ray POLITTE, Appellant.

No. SD 31469.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 25, 2013.

Dan Viets, Columbia, for Appellant.

Chris Koster, Atty. Gen. and Laura E. Elsbury, Asst. Atty. Gen., Jefferson City, for Respondent.

**DANIEL E. SCOTT, P.J.**

Officers got a search warrant for a double-wide trailer with detached garage "occupied by Kyle T. Kientzel and others." The basis was an informant's tip that he had been there, "had talked to Kyle Kientzel and several others, and had seen Kientzel go outside the residence and within seconds, bring in marijuana, which he believe [sic] to be about a quarter pound."

The search took place the next morning. Kientzel was not there, but the trailer owner and other occupants were. Joshua Politte was among those in the living room, where loose marijuana and paraphernalia were in plain view on a coffee table. A bagged quarter-pound of compressed, brick-like marijuana was found under the back corner of the couch.

Paraphernalia and loose marijuana were plainly visible near the bed and on a dresser in the bedroom that Politte and his girlfriend shared.

Search of the detached garage yielded a duffel bag containing three marijuana bricks similar in consistency to the quarter-pound found behind the couch.

Politte, when questioned about the marijuana that was found, said officers "should talk to Kyle."

The state charged Politte with possession with intent to distribute, a class B felony. *See* § 195.211.[1] After a bench trial, he was found guilty of the lesser felony of possessing more than 35 grams of marijuana. *See* § 195.202.

---

1. Statutory references are to RSMo 2000, as amended through 2008.

2. The state's theory was constructive possession. "A person who, although not in actual possession, has the power and the intention at

### Challenge to Felony Conviction

As Politte candidly concedes, the record supports a misdemeanor conviction for possessing less than 35 grams of the loose marijuana. He urges, however, that the state did not prove that he "knowingly possessed and exercised dominion and control over a felonious amount of marijuana," *i.e.*, the compressed, brick-like quantities found in the garage or under the couch.[2]

Our review for sufficiency of evidence is as in jury-tried cases. *State v. Buford,* 309 S.W.3d 350, 354 (Mo.App.2010). We accept evidence and reasonable inferences favoring the conviction and disregard those to the contrary, but we cannot supply missing evidence or give the state the benefit of unreasonable, speculative, or forced inferences. *State v. Moses,* 265 S.W.3d 863, 865 (Mo.App.2008).

### Analysis

To support any charge of possession, "it is necessary to prove that the accused knew of the presence of the forbidden substance and that the same was under his control." *State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975). The compressed marijuana was hidden on jointly occupied premises. Thus, the state acknowledges its need for additional evidence that Politte knew of *and* controlled these drugs.

> Where a person is present on premises where drugs are found but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submis-

---

a given time to *exercise dominion or control* over the substance either directly or through another person or persons is in constructive possession of it." § 195.010(34) (our emphasis).

sible case is made. Additional factors are required.

*Id. See also State v. Hendrix,* 81 S.W.3d 79, 83 (Mo.App.2002); *State v. West,* 21 S.W.3d 59, 63 (Mo.App.2000).[3]

As proof that it carried this burden, the state cites (1) Politte's routine access to the living room and shared bedroom where drugs were found; (2) his proximity to paraphernalia and loose marijuana in plain view on the coffee table; and (3) the large quantities of marijuana in the detached garage.[4]

We agree that these facts, viewed favorably to the state, reasonably indicate Politte's knowledge of the marijuana. That he did not feign surprise or ignorance, but told officers to talk to Kientzel, may also suggest such knowledge.

Yet it is one thing to infer *knowledge* of drugs, and another to infer *control* or *ownership* of them. *West* and *Hendrix* are instructive.

West co-owned and jointly occupied her home. *West,* 21 S.W.3d at 61. When police arrived with a search warrant, she surrendered marijuana from her purse. *Id.* at 62. A jar of liquid hidden in the freezer tested positive for methamphetamine. *Id.* In reversing West's meth-related convictions, our western district noted that "[w]hile Ms. West had routine access to the freezer, the jar of black liquid was in the back of the freezer," and "even if Ms. West knew about the

methamphetamine in the freezer and recognized it as a controlled substance, this knowledge alone fails to support a finding that Ms. West possessed the methamphetamine." *Id.* at 66.

In *Hendrix,* police found marijuana in the living room, a "yellow rock substance" in a bedroom then occupied by Hendrix, and 37 rocks of cocaine base hidden in the other bedroom. 81 S.W.3d at 81–82. Hendrix arrived during the search, a crack pipe containing cocaine concealed on her person. *Id.* She admitted using crack that day, but told officers that any "dope" in the apartment either "wasn't hers" or "couldn't be pinned on her." *Id.* at 81. She was charged with trafficking, based on the 37 rocks, and found guilty. *Id.* at 81–82. Her conviction was reversed with repeated citation to *West. Id.* at 83, 85, 86.

*West* and *Hendrix* were stronger cases than this one. West co-owned the house and, presumably, the freezer where the meth was found and had other drugs in her purse. Hendrix, an admitted crack user who was arrested possessing a pipe containing cocaine, occasionally delivered drugs for a dealer and sometimes kept the dealer's "stash" on her person. *Hendrix,* 81 S.W.3d at 82, 85. By contrast, any proof of drug dealing here, or of handling a quarter-pound quantity, or of exiting the trailer and returning with marijuana, involved Kyle Kientzel. Even if we ignore that evidence, per our standard of review,

---

**3.** Factors may include self-incriminating statements; consciousness of guilt; a great quantity of the illegal substance at the scene; or the subject of the controversy being in public view, or commingled with the accused's personal belongings, or in a place where the accused has routine access. *Hendrix,* 81 S.W.3d at 83–84; *West,* 21 S.W.3d at 63. We consider the totality of circumstances in determining if sufficient additional incriminating circumstances were proved. *West,* 21 S.W.3d at 63.

**4.** The record does not support the state's claim to have shown that marijuana was commingled with Politte's personal belongings. *Compare State v. Ramsey,* 358 S.W.3d 589, 592 (Mo.App.2012), and cases cited therein. This failure, among other factors, distinguishes *State v. Richardson,* 296 S.W.3d 21 (Mo.App.2009), the case upon which the state principally relies.

nothing shows that Politte, rather than Kientzel or any other occupant, controlled the compressed marijuana in the garage or, for that matter, under the couch.

The record may indicate Politte's familiarity with drugs and Kientzel's illegal activities, and Politte's knowledge that drugs were on the premises, but does not justify an inference that he possessed or controlled the felonious quantities of compressed marijuana. *Compare Hendrix*, 81 S.W.3d at 85. Even if Politte had routine access to the living room, "the evidence showed many others did as well," *Moses*, 265 S.W.3d at 866, and there was no showing that Politte used the detached garage.

"This case, like *West*, presents circumstances that might indicate that the defendant had knowledge of the substance, but no circumstances that could indicate that the defendant exercised control over the substance. Evidence of both is required to support a conviction." *Hendrix*, 81 S.W.3d at 86. We grant Politte's sole point.

That said, Politte is not entitled to be discharged because we found that the evidence was insufficient to establish the State's *prima facie* case for the class C felony of possession. Well-established law states that, when we overturn a conviction for insufficient evidence, we may enter a conviction for the lesser offense if the evidence was sufficient for the jury to find all the necessary elements for that offense.

*State v. McClain*, 301 S.W.3d 97, 103 (Mo.App.2010). That is the case here, as indicated above, regarding possession of marijuana, a class A misdemeanor. Per *McClain*, therefore, we reverse this felony conviction and remand with directions to enter judgment convicting Politte of possession of marijuana, a class A misdemeanor under § 195.202.3, and to sentence him accordingly.

JEFFREY W. BATES, J., and DON E. BURRELL, C.J., concur.