STATE of Missouri, Respondent,

v.

Lynn C. REINSCHMIDT, Appellant.

No. 22105.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 17, 1998.

Motion for Rehearing and Transfer
Denied Jan. 11, 1999.

Application for Transfer Denied
Feb. 23, 1999.

190

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

KERRY L. MONTGOMERY, Judge.

A jury found Lynn C. Reinschmidt (Appellant) guilty of second degree drug trafficking pursuant to § 195.223.4.[1] The trial court subsequently sentenced Appellant to twelve years' imprisonment as a prior drug offender. Appellant appeals this judgment and sentence.

Appellant raises two allegations of error in this appeal. In his first point, Appellant argues the trial court erred in failing to disqualify the Greene County Prosecuting Attorney's Office due to a conflict of interest. In his second point on appeal, Appellant maintains there was insufficient evidence upon which to convict him.

We view the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the judgment, disregarding all contrary evidence. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). The evidence presented at trial is set forth in accordance with this standard.

On January 27, 1993, Sergeant Dana Carrington and Detective Mark Deeds of the Springfield Police Department arrested Appellant for possession of marijuana after witnessing him smoke a "joint." The officers searched Appellant and discovered a plastic baggie containing one ounce of marijuana and another baggie containing sheets of white perforated paper. Officer Carrington recognized the type of paper as being consistent with that used for lysergic acid diethylamide (LSD) doses.

After being advised of his *Miranda* rights Appellant agreed to speak with the officers. Appellant said there were 5000 "hits" or doses of LSD on the paper. Appellant told the officers he had flown from St. Louis to Oakland, California, with the intent to purchase drugs. He admitted he purchased the LSD in San Francisco and was en route to St. Louis when the officers arrested him. Appellant also admitted he intended to sell the LSD in St. Louis.

The paper containing the suspected LSD was delivered to the Missouri Highway Patrol crime laboratory for examination. Nancy Massman, a chemist for the Highway Patrol, tested the samples. Fifteen sheets of paper of different sizes and shapes were seized and submitted. Massman weighed each sheet. The sheets weighed a total of 40.6 grams.

Massman then performed three tests to detect the presence of LSD. She used one sheet of paper for each test. The tests positively identified LSD on the sheets of paper from which the samples came. Massman did not test each of the fifteen sheets of paper. Massman testified that in her opinion, to a reasonable degree of scientific certainty, the sheets contained LSD and the weight of the specimen was over 1 gram.

Appellant was charged with drug trafficking in the second degree. He was initially represented for a substantial period of time by Elizabeth Bock, who was employed as a Greene County assistant public defender at the time. Bock was later hired by the Greene County Prosecuting Attorney's Office. Prior to trial, Bock submitted an affidavit stating that she was in no way involved with the prosecution of Appellant's case and that she had not disclosed any confidential communications or information to anyone within the prosecutor's office.

1. Statutory references are to RSMo 1994 unless otherwise noted.

At trial, Appellant filed a motion to disqualify the Greene County Prosecuting Attorney's Office from trying the case on the basis of Bock's prior representation of him. Appellant admitted he had no evidence that Bock had done anything improper but refused to waive his objection to the involvement of the Greene County Prosecuting Attorney's Office in his case. Appellant's motion was overruled. After a jury trial on the matter, Appellant was found guilty as charged.

In his first point on appeal, Appellant claims the trial court erred in denying his motion to disqualify the Greene County Prosecuting Attorney's Office and failing to appoint a special prosecutor due to the conflict of interest created by Bock's extensive work on Appellant's case. Appellant contends the appearance of impropriety was so great that the prosecuting attorney's office should have been disqualified when he refused to waive his objection to the conflict. We agree.

A similar issue was addressed in *State v. Ross*, 829 S.W.2d 948 (Mo. banc 1992), when the Missouri Supreme Court examined whether the entire prosecutor's office should be disqualified because part-time prosecutors were employed by a private law firm which represented the defendant in a civil matter related to the criminal charges against him. The Supreme Court determined the conflict created by the dual roles of two assistant prosecuting attorneys mandated disqualification of the entire prosecutor's office. A close comparison of the facts in *Ross* with those in the instant case compels us to reach the same conclusion.

In *Ross*, the defendant was convicted of assault in the first degree and armed criminal action. Clay County Assistant Prosecuting Attorney Brian J. Klopfenstein filed the criminal complaints against the defendant. While employed part time at the prosecutor's office, Klopfenstein was also associated with a private law firm. Defendant subsequently contacted Klopfenstein's law firm to defend him in a civil case stemming from the same incidents which resulted in the criminal charges.

After defendant's original attorney in the law firm became ill, Stephen Mowry took over the case for the firm. Mowry interviewed the defendant, taking a confidential statement concerning the facts of the case. Mowry also took depositions as the defendant's counsel and spoke to the defendant on the telephone. Although the defendant spoke with other members of the firm, he considered Mowry his attorney. The defendant never met with Klopfenstein in conjunction with the firm's defense of the civil case.

Mowry also worked as a part-time Assistant Prosecuting Attorney for Clay County. There was no evidence that anyone acting for the firm ever informed the defendant that two of its members were also assistant prosecuting attorneys. The defendant learned of the dual nature of Klopfenstein and Mowry's employment when the prosecutor at his criminal trial informed the venire panel of the names of all attorneys working in the prosecutor's office. The defendant informed his criminal defense counsel that the Mowry working for the prosecutor's office might be the same attorney who was representing him in the related civil case.

There was no evidence of any communications, concerning anything that the law firm was told by the defendant or learned on his behalf, passing between the members of the firm and members of the prosecuting attorney's office who actually worked on the criminal case. Klopfenstein did not work on the civil case, and his only involvement in the criminal case was filing the original complaint. Mowry worked on the civil case but had no involvement in the criminal case.

Based upon these facts, and after analysis of the Rules of Professional Conduct and cases construing the same, the Supreme Court concluded:

> In this case, the interconnections between the prosecuting attorney's office and the law firm handling [the defendant's] related civil case create such suspicions and appearances of impropriety and show that members of the prosecuting attorney's office had the potential access condemned in [prior case law]. As Klopfenstein and Mowry were employed by the prosecutor throughout the period this case was pending trial, their actions and the actions of

their law firm disqualify the entire prosecuting attorney's office.... [T]his Court will not require a showing of actual prejudice in a case of this type. Prejudice is presumed, subject to rebuttal only upon a showing that the defendant waived the conflict *and* that steps were taken to insulate the actual prosecution from the conflict.

*Ross*, 829 S.W.2d at 951–52. The Court then articulated preventative steps that would rebut the inference of prejudice in similar circumstances, stating:

In every case—upon discovery by any party or counsel of the potential conflict of interest—that person shall disclose the conflict in open court in the presence of the defendant. Absent a waiver of the conflict of interest by the defendant, a special prosecutor shall be appointed. If the defendant has waived, or then chooses to waive, the conflict, the prosecuting attorney shall still show before the start of the trial that the individual attorney(s) with the potential conflict have been insulated.

*Id.* at 952.

The State argues the standard for preventing potential conflict set by *Ross* should not apply in the instant case. The State notes the conflict in *Ross* concerned simultaneous employment and representation rather than successive employment and argues this is enough to differentiate it from Appellant's case. We disagree.

■ "We are constitutionally bound to following the controlling decisions of the Missouri Supreme Court." *State v. Tuter*, 920 S.W.2d 111, 112 (Mo.App.1996); Mo. Const. art V, § 2 (1945). *Ross* is the controlling decision on this conflict issue, and we are therefore bound to follow it. Indeed, the potential conflict presented by Appellant's criminal defense attorney becoming affiliated with the prosecuting attorney's office creates the same suspicions and appearance of impropriety as mentioned in *Ross*.

Bock was Appellant's criminal defense attorney for more than two years on the case for which he was tried after she went to work in the prosecuting attorney's office. She was not merely representing him in a civil matter. Her contact with him was neither casual nor brief. She had the opportunity to gain confidential information about his case which had the potential to aid the prosecution.

■ Even though Bock submitted an affidavit swearing she did not disclose any confidential information, this situation is one that "create[s] such suspicions and appearances of impropriety" that prejudice is presumed subject to rebuttal. *Ross*, 829 S.W.2d at 951–52. Rebuttal of such presumed prejudice required 1) a showing that Appellant waived the conflict, and 2) that steps were taken to insulate the actual prosecution. *Id.* Appellant specifically refused to waive the conflict. The trial court erred in failing to disqualify the Greene County Prosecuting Attorney's Office and failing to order the appointment of a special prosecutor. On remand, the Greene County Prosecuting Attorney, including any assistant, is disqualified from trying this case due to the conflict of interest. The circuit court shall appoint a special prosecutor pursuant to § 56.110. Point I is well taken.

In his final point on appeal, Appellant argues the trial court erred in denying his motion for judgment of acquittal at the close of evidence and in sentencing him because there was insufficient evidence upon which to convict him of drug trafficking in the second degree. Appellant complains the State did not present sufficient evidence that he possessed one gram or more of a substance containing a detectable amount of LSD as required for conviction under § 195.223 because the chemist did not individually weigh and test each of the fifteen sheets of paper seized from him. Appellant contends the jury could only have found him, at most, guilty of a class C felony.

In reviewing a challenge to the sufficiency of the evidence, this Court is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Grim*, 854 S.W.2d at 405. We review the evidence adduced at trial and examine the inferences reasonably supported by that evidence to determine whether the jury's verdict was proper. *Id.*

According to § 195.223.4:

4. A person commits the crime of trafficking drugs in the second degree if ... he possesses or has under his control ... or brings into this state more than five hundred milligrams of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD). Violations of this subsection shall be punished as follows:

. . . .

(2) If the quantity involved is one gram or more the person shall be guilty of a class A felony.

Appellant agues the State failed to prove the LSD in his possession weighed one gram because Massman, the testing chemist, testified she only tested a sample of the seized materials. Although the sample tested positive for LSD, Appellant argues there was no evidence that the untested papers contained the same substance.

■ Missouri has recognized, however, that the State is not required to test all samples of a single substance. *State v. Givens,* 917 S.W.2d 215, 217 (Mo.App.1996) (affirming conviction where only one of seventeen similar samples was tested); *State v. Gibson,* 856 S.W.2d 78, 79–80 (Mo.App.1993) (testing one of several chunks of crack cocaine was sufficient for conviction). Furthermore, it is not necessary to weigh each sample individually in order to prove the total weight. "It is sufficient that the weight be determined in some reasonable manner." *Givens,* 917 S.W.2d at 217.

■ Massman used three different tests on three of the sheets of paper taken from Appellant. Each one came back positive for the presence of LSD. Although Massman did not individually weigh the sheets of paper, she did testify the combined weight of the sheets of paper exceeded one gram. This was sufficient evidence from which a reasonable juror could have concluded the fifteen sheets of paper contained LSD with a total weight of one gram or more. Accordingly, the trial court did not err in overruling Appellant's motion for acquittal at the close of evidence. Point II is denied.

The judgment below is reversed, and the case is remanded for a new trial in accordance with this opinion.

SHRUM, P.J., and BARNEY, J., concur.